UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAUL FLORES-HERNANDEZ,<br>  also known as "El Tio,"<br><br>        Defendant. | Case No. 17-cr-51 (BAH) |

## GOVERNMENT'S MOTION FOR PRE-TRIAL DETENTION

The United States, by and through the undersigned attorney, respectfully moves to detain the Defendant, Raul Flores-Hernandez (the "Defendant"), pursuant to 18 U.S.C. § 3142(e)(1). The Defendant is a high-level member of an international drug trafficking organization ("DTO") operating primarily from Jalisco State in Mexico. The Defendant was extradited from Mexico to face a significant drug-trafficking offense in this District. He faces significant jail time, including a mandatory minimum sentence of ten years; has access to substantial assets; has no immigration status in the United States; and is subject to an immigration detainer. For the reasons that follow, the Defendant presents a serious risk of flight and a danger to the community that cannot be mitigated by any condition or combination of conditions and he should be detained pending trial. *See* 18 U.S.C. § 3142(e)(1).

## BACKGROUND

On March 8, 2017, a federal grand jury sitting in the District of Columbia returned a single-count Indictment charging the Defendant with conspiring to distribute five kilograms or more of cocaine, intending and knowing that the cocaine would be unlawfully imported into the United States, in violation of 18 U.S.C. §§ 959(a), 960(b)(1)(B)(ii), and 963. This charge gives

rise to a ten-year mandatory minimum sentence and a maximum sentence of life.  The Indictment alleges that the Defendant's participation in the cocaine trafficking conspiracy began in 1983 and continued for more than three decades.

The Indictment in this case is the product of an extensive, long-term, and ongoing investigation conducted by the U.S. Drug Enforcement Administration's Los Angeles Field Division ("DEA") into the narcotics-trafficking activity of the Cartel Jalisco Nueva Generación ("CJNG") and high-volume drug traffickers, such as the Defendant, who work with CJNG. CJNG is a violent and prolific drug trafficking organization ("DTO") based in the Mexican State of Jalisco that is responsible for transporting into and distributing throughout the United States thousands of kilograms of cocaine, heroin, marijuana, and synthetic narcotics per year.

While himself not a member of CJNG, the Defendant worked closely with CJNG and other DTOs, including the Sinaloa Cartel, to invest in and coordinate the transportation of large quantities of cocaine destined for the United States.  Should this case proceed to trial, the Government intends to introduce, *inter alia*, testimony from witnesses who worked directly with the Defendant in the sale and distribution of cocaine, a recording of the Defendant engaging in drug-trafficking activities, and Title III intercepts.

Following the return of the Indictment, the government promptly transmitted an extradition request to Mexico seeking the Defendant's arrest and extradition to the District of Columbia. On July 20, 2017, Mexican authorities arrested the Defendant in Zapopan, Jalisco, Mexico, pursuant to a provisional arrest warrant.  The Defendant was detained in Mexico while he contested extradition to the United States in Mexican courts.  He was extradited to the District of Columbia on February 5, 2021.  The Defendant made an initial appearance in the Superior

Court of the District of Columbia on February 6, 2021, at which time he was detained pending his initial appearance and arraignment in this Court on February 8, 2021.

The Defendant is a well-known businessman in the Guadalajara, Jalisco, area who has access to significant assets and wealth. He has no legal immigration status in the United States, and the United States is unaware of any contacts the Defendant maintains in this District or in the United States, other than any co-conspirators related to the Indictment. Immigration and Customs Enforcement issued a detainer and would take the Defendant into custody should be released pending trial.

## APPLICABLE LAW

### A. The Bail Reform Act

Under the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, a court "shall" order a defendant's pre-trial detention upon determining that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is required if a court finds, by clear and convincing evidence, that there are no conditions or combination of conditions that will reasonably assure the safety of the community. 18 U.S.C. § 3142(f); *see United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). Detention also is required if a court finds, by a preponderance of the evidence, that no condition or combination of conditions would reasonably assure the defendant's appearance in court. *Simpkins*, 826 F.2d at 96. A court must order a defendant detained if it finds the defendant to be either a danger to the community or a flight risk; the government need not prove both. 18 U.S.C. § 3142(e)(1), (f)(2).

When considering whether detention is warranted pursuant to 18 U.S.C. § 3142(e)(1), courts must consider the following four factors: (1) the nature and circumstances of the offenses

charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release, and (4) the weight of the evidence against the defendant should he proceed to trial. 18 U.S.C. § 3142(g).

### B. Statutory Presumption of Risk of Flight and Dangerousness

There are a number of statutory presumptions in favor of detention, including one that applies to the Defendant. Pursuant to 18 U.S.C. § 3142(e)(3)(A), "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" if the court finds probable cause that the defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." This presumption is "subject to rebuttal" by the defendant. 18 U.S.C. § 3142(e)(3). The Indictment charges the Defendant with conspiring to distribute five kilograms or more of cocaine, intending and knowing that the cocaine would be unlawfully imported into the United States, in violation of 18 U.S.C. §§ 959(a), 960(b)(1)(B)(ii), and 963, which is an offense for which the Controlled Substances Act prescribes a maximum penalty of life in prison. Accordingly, the Indictment is sufficient to trigger this rebuttable presumption. *United States v. Smith*, 79 F.3d 1208 (D.C. Cir. 1996); *United States v. Mosuro*, 648 F. Supp. 316, 318 (D.D.C. 1986).

When the presumption is triggered, it operates "at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). However, the presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains as an evidentiary finding militating against release and to be weighed along with all the evidence relating to the factors listed in Section 3142(g). *See United States v. Cherry*, 221 F.

Supp. 3d 26, 32 (D.D.C. 2016) (citing *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011) and *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). In other words, "it does not follow that the effect of the presumption disappears as soon as the defendant produced some contrary evidence. Congress framed the flight presumption in light of its general finding, based on extensive testimony, that flight to avoid prosecution is particularly high among those charged with major drug offenses." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1985); *see also Cherry*, 221 F. Supp. 3d at 32; *Ali*, 793 F. Supp. 2d at 391. For the reasons that follow, the Defendant will be unable to satisfy his burden to rebut the presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community.

## ARGUMENT

Since 1983, the Defendant and his DTO have worked with Mexican cartels to transport thousands of kilograms of cocaine destined for the United States.  He contested extradition, has access to considerable wealth, has no ties to the District or the United States unrelated to the charged conspiracy, and is subject to an immigration detainer.  If convicted, the Defendant faces an applicable Guidelines range of life and a ten-year mandatory minimum sentence. Accordingly, as described in greater detail below, the safety of the community cannot reasonably be assured, and the risk of flight is substantial.  Consequently, an order of detention is warranted.

### A. Nature and Circumstances of the Offense Charged

The Defendant was a significant, international cocaine trafficker.  Operating primarily in Mexico, he worked closely with large, established cartels such as CJNG and the Sinaloa Cartel to transport multi-hundred and multi-ton kilogram quantities of cocaine from Colombia to and through Mexico and onward into the United States. The Defendant used his connections to

sources of supply in Colombia and access to the magnitude of capital necessary to invest in these large cocaine transportations. He then leveraged the vast distribution networks of the cartels to transport the cocaine from Colombia to Mexico and, later, to the United States.

The Indictment alleges that the Defendant actively engaged in a conspiracy to traffic cocaine into the United States for more than three decades: from 1983 until his arrest in 2017. In that time, the Defendant was involved in the transport of dozens, if not hundreds, of loads of cocaine into the United States.

The offense charged in the Indictment also carries with it a significant penalty. If convicted, based on the volume of cocaine he is alleged to have distributed, the Defendant faces a mandatory minimum term of ten years in prison, a mandatory sentence of life in prison, and a significant applicable Guidelines range.

The possibility of a severe sentence is an important factor in assessing a defendant's incentive to flee. *See United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (holding the nature and circumstances of the offenses charged against defendant strongly favor detention because of the substantial incentive to flee the United States); *see also United States v. Anderson*, 384 F.Supp.2d 32, 36 (D.D.C. 2005); *United States v. Ali*, 793 F. Supp. 2d at 392. Moreover, courts have repeatedly recognized that the risk of "[f]light to avoid prosecution is particularly high among persons charged with major drug offenses," because "drug traffickers often have established ties outside the United States . . . [and] have both the resources and foreign contacts to escape to other countries." *See, e.g.*, *United States v. Alatishe*, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C C.A.N. 1, 23). This is nowhere more evident than here, where the Defendant is a foreign national who committed the offense abroad, resides abroad, and controls substantial assets abroad. Indeed, "Congress made

'risk of flight' a grounds for detention because it believed that there were major drug dealers to whom the posting and losing of even large amounts of money bond were not a deterrent, but a mere cost of doing business." *United States v. Battle*, 59 F.Supp.2d 17, 19 (D.D.C. 1999).

Accordingly, the breadth, scope, nature, and potential penalties of the charged offense support a finding that no conditions or combination of conditions exist that will reasonably assure the Defendant's appearance before this Court and the safety of the community.

### B. History and Characteristics of the Defendant

The Defendant's history and characteristics also give rise to a high risk of flight. The Defendant has access to considerable financial resources. He is a wealthy Mexican businessman with assets in and strong ties to Mexico. Conversely, he has few, if any, known ties in the District and United States outside of his co-conspirators. Indeed, the Defendant is subject to sanctions that would make his release pending trial impossible. On August 8, 2017, the Treasury Department's Office of Foreign Asset Control designated the Defendant and his DTO as "significant foreign narcotics traffickers" pursuant to the Drug Kingpin Act, 21 U.S.C. § 1901 *et seq.*[1] Accordingly, U.S. persons are prohibited from engaging in business with the Defendant. Additionally, the Defendant has no immigration status in the United States and is subject to an immigration detainer and would be taken into custody upon release on conditions pending trial.

Furthermore, the Defendant contested extradition in the Mexican courts, and has the financial resources and incentive, given the potential penalties if convicted, to flee the District and the country if given an opportunity to do so. The Defendant has been brought here under the authority of this Court solely for the purpose of federal prosecution. In short, the Defendant has

---

[1] Press Release, Treasury Department, Treasury Sanctions Longtime Mexican Drug Kingpin Raul Flores Hernandez and His Vast Network (Aug. 8, 2017), https://www.treasury.gov/press-center/press-releases/Pages/sm0144.aspx (last visited Feb. 4, 2021).

no reason to remain in this country other than this criminal case, and he therefore represents an overwhelming risk of flight if released from custody.

In sum, the Defendant has the means, motive, and opportunity to flee the country and should be detained without bail. *See Hong Vo*, 978 F. Supp. 2d at 43 (finding detention warranted because not only was defendant indicted on serious charges carrying a severe punishment potential, but defendant had ability to flee the United States); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 36 (D.D.C. 2005) (finding detention warranted because not only did the defendant have the ability to flee the District of Columbia and the United States, he also had the ability to live comfortably in foreign jurisdiction and evade capture due to his substantial assets abroad). In light of the foregoing, therefore, there are no conditions or combination of conditions that will reasonably assure his appearance in this Court.

### C. Safety of the Community

Courts have recognized that drug traffickers, particularly those in positions of authority, are likely to continue engaging in drug-related activities if released on bail and thus constitute a danger to the community. *See, e.g.*, *Alatishe*, 768 F.2d at 370 n.13 (citation omitted). The Defendant participated in an international drug transportation and distribution organization which imported cocaine, a dangerous controlled substance, into the United States for distribution to the United States public at large. If he were released and continued in this conduct, he would pose a significant risk to the safety of the community, both here in the United States and abroad.

### D. Weight of the Evidence

Where, as here, the evidence of guilt is strong, it provides an additional incentive to flee. *See United States v. Medina*, 255 F. Supp. 2d 3, 4 (D.D.C. 2006); *see also United States v. Vergara*, 612 F. Supp. 2d 36, 37 (D.D.C. 2009). The evidence against the Defendant is

overwhelming. The evidence includes the testimony of multiple witnesses with personal knowledge of the Defendant's role in this international drug trafficking conspiracy as well as additional items including a recording of the Defendant engaging in drug-trafficking activities and Title III intercepts. Given the strength of the evidence against him, and the potential sentence upon conviction, there is no condition or combination of conditions that would assure the Defendant's appearance in court or the safety of the community.

## CONCLUSION

Based on the foregoing, an analysis of the factors laid out in 18 U.S.C. § 31429(g) establishes (a) by clear and convincing evidence that there are no conditions or combination of conditions that reasonably assures the safety of the community and (b) by a preponderance of the evidence that that there are no conditions or combination of conditions that reasonably assures the appearance of the Defendant in court. *See* 18 U.S.C. § 3142(e)(1), (f)(2). Accordingly, the Court should grant the Government's Motion for Pre-Trial Detention and issue an order detaining the Defendant pending trial in this matter.

Respectfully submitted this 8th day of February 2021.

            ARTHUR G. WYATT
            Chief, Narcotic and Dangerous Drug Section

      By:  */s/ Katharine A. Wagner*
           KATHARINE A. WAGNER
           Trial Attorney
           Narcotic and Dangerous Drug Section
           Criminal Division
           United States Department of Justice
           145 N Street, NE, 2nd Floor East
           Washington, D.C. 20530
           (202) 514-4584
           katharine.wagner@usdoj.gov

## **CERTIFICATE OF SERVICE**

    I hereby certify that a true copy of the foregoing Government's Motion for Pretrial Detention was filed with the Clerk of the Court via CM/ECF system, which will deliver a Notice of Electronic Filing on all counsel of record on this day, the 8th of February, 2021.

                                                            */s/ Katharine A. Wagner*
                                                             KATHARINE A. WAGNER
                                                            Trial Attorney
                                                           Narcotic and Dangerous Drug Section